## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| PATRICK DUNN, and HOPE ELLY, | ) ) ) | |
| **Plaintiffs,** | ) ) | CIVIL ACTION NO. |
| v. | ) ) | _____ |
| TARGET CORPORATION, | ) ) | |
| **Defendant.** | ) ) ) | |

## COMPLAINT

**COMES NOW** the Plaintiffs, Patrick Dunn and Hope Elly hereinafter ("Plaintiffs") by and through their undersigned counsel, and hereby file this Complaint against the Defendant for injunctive relief, attorney's fees and costs pursuant to 42 U.S.C. §12181, et. seq, ("the Americans with Disabilities Act") and state as follows:

### JURISDICTION, PARTIES, AND STANDING

1. This is an action for declaratory and injunctive relief pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA") and its implementing regulations. This Court is vested with original jurisdiction under  28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Southern District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Southern District of Alabama.

3. Plaintiff, Patrick Dunn, was in an automobile accident on March 8, 2001, that

caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair and restricted his ability to use his hands, arms, and legs. Mr. Dunn is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

4.   Plaintiff, Hope Elly, suffers from cerebrovascular accidents, which are more commonly known as strokes. These strokes have effected both her motor and sensory functions, which causes inactivity and/or paralysis of the muscles; therefore, maintaining balance, walking, and the ability to use her hands are extremely difficult. As a result of her disability, she relies on mobility aids for locomotion. The extent of Ms. Elly's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, grab, twist, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Elly is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *See also,* 28 C.F.R. § 36.104.

5.   Defendant, Target Corporation, (hereinafter "Target") is a domestic corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Targets "owns" and "operates" the retail store located at 3820 Gulf Shores Parkway, Gulf Shores, Alabama, 36542. 42 U.S.C. § 12182. The retail store is a place of public accommodation pursuant

[2]

to 42 U.S.C. § 12181 (7).

6. All events giving rise to this lawsuit occurred in the Southern District of Alabama and the Defendant is a citizen thereof.

7. Mr. Dunn vacations in Gulf Shores, Alabama every spring break. During Mr. Dunn's vacation he and his family stay at a condo, and to get snacks and other foods to eat during their trip, Mr. Dunn and his family go shopping at Target, which is the subject of this action. Mr. Dunn specifically and definitely intends to continue shopping at Target when he goes to Gulf Shores with his family. Mr. Dunn does not know exactly when he and his family will go back to Gulf Shores, because they have not planned out every vacation and every shopping trip for the rest of their lives. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc*. No. 11-61766-cn, (S.D. Fla 2012)("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment*".). Mr. Dunn definitely intends to return to Gulf Shores and Target even after it has been repaired. Mr. Dunn definitely intends to return to Target, however not only to shop, but also to see if Target will do the repairs to become ADA compliant. Mr. Dunn will continue to return even after the repairs are made because Target is a nice place to shop.

8. Plaintiff, Hope Elly, regularly travels to Gulf Shores, Alabama because there is more of a variety of stores, restaurants, and activities in Gulf Shores. Ms. Elly

[3]

enjoys shopping at stores that provide a variety of merchandise. More specifically, Ms. Elly enjoys Target, which is the subject of this action. Ms. Elly specifically and definitely intends to continue to go to Target when she travels to Gulf Shores. Ms. Elly does not know exactly when she will go back to Target, because she has not planned out every trip for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, *e.g. Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012)(*"Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment"*.). Ms. Elly definitely intends to return to Target, however not only to shop, but also to see if Target will do the repairs to become ADA compliant. Ms. Elly will continue to return even after the repairs are made because Target is a better place to shop than Wal-Mart for the same general merchandise.

9. Because of the barriers described below in paragraph 21, and throughout the Complaint, Plaintiffs have been denied full and equal enjoyment of the Defendants' premises on the basis of their disabilities.

10. Mr. Dunn and Ms. Elly accordingly, have standing to pursue this case because (1) they are disabled, pursuant to the statutory and regulatory definition; (2) the Defendants' retail store is a place of public accommodation, pursuant to the statutory and regulatory definition; and (3) they have been denied full and equal enjoyment of the Defendants' premises on the basis of thier disabilities. As described more fully in paragraph 19, there exists a genuine threat of imminent

[4]

future injury.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(b)(2)(A)(iv) and (v)

11. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

12. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it provides clothing and other apparel for purchase to the public, as well as a broad array of retail goods. Accordingly, it is covered by the ADA and must comply with the Act.

13. Plaintiffs are informed and believe based on publicly available information that the building in which Target is located was first constructed in 2006. Upon further information and belief, based on publicly available information, alterations and/or improvements were made to the walls, pavement, and asphalt in 2007.

14. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be

[5]

*readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start

[6]

of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012.

16. For the violations at issue in this case, the 2010 Standards for Accessible Design and the practice/policy violations are applicable.

17. The Defendant has discriminated, and continue to discriminate, against Plaintiffs, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Target in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv), where such removal is readily achievable, or, even if the removal   is not readily achievable, by failing to use alternative methods that are readily achievable, 42

[7]

U.S.C. § 12182 (b)(2)(A)(v).

18. As described above, prior to the filing of this lawsuit, Plaintiffs were denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's facility. Plaintiffs' access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the facility in violation of the ADA. Because of the foregoing, Plaintiffs have suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

19. Plaintiffs have definite plans to return to Target in the future, as described above. Plaintiffs will return to Target within the next few months not only to shop, but also to see if Target has repaired the barriers, and changed its policies and procedures. Plaintiffs will continue to do so. Even when Target is repaired, Plaintiffs will continue to shop there, as they have in the past visits to Gulf Shores. Absent remedial action by Defendant, Plaintiffs will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of their disabilities. The Eleventh Circuit, held in *Houston v. Marod Supermarkets*, when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff… will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiffs' future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

20. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the

Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

21. Plaintiffs have been from the parking lot to the entrance, from the entrance to the retail areas, to and throughout the retail areas, the retail areas themselves, from the entrances to and throughout the dressing rooms, the dressing rooms themselves; the check-out service counter, throughout circulation paths and accessible routes, and the retail and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 3820 Gulf Shores Parkway, Gulf Shores, Alabama 36542, more commonly known as "Target", violates the ADA in the parking lot, from the entrance to and throughout the store and the retail and service areas, dressing rooms, and in particular but not limited to:

## Parking Lot

a. The facility provides parking on the right side of the entrance for able-bodied individuals, but fails to afford the non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    i. The first purported ADA van accessible parking space closest to the facility has an adjacent access aisle that fails to meet the required width of 96 inches;

    ii. The second purported ADA van accessible parking space closest

[9]

to the facility has an adjacent access aisle that fails to meet the required width of 96 inches;

    **iii.** The third purported ADA van accessible parking space closest to the facility has an adjacent access aisle that fails to meet the required width of 96 inches;

    **iv.** The facility fails to maintain the accessible features at the purported van accessible parking spaces that are required to be readily accessible to and usable by individuals with disabilities;

**b.** Target provides parking on the left side of the entrance for able-bodied individuals, but fails to afford the non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.** The first purported ADA van accessible parking space closest to the facility has an adjacent access aisle that fails to meet the required width of 96 inches;

    **ii.** The second purported ADA van accessible parking space closest to the facility has an adjacent access aisle that fails to meet the required width of 96 inches;

    **iii.** Target fails to maintain the accessible features at the purported van accessible parking spaces that are required to be readily accessible to and usable by individuals with disabilities;

[10]

**Food Service Area**

    c.    Target provides service counters for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals, including but not limited to the following elements:

        i.   The service counters fail to extend the same depth as the non-accessible portion of the service counters;

       ii.   The service counters fail to provide the required knee and toe clearance for an individual with a disability from being able to approach the service counter;

     iii.   There is no ADA accessible check-out counter provided 28 inches maximum and 34 inches minimum above the finished floor that allows for the required knee and toe clearance;

      iv.   The service counters exceed the maximum allowed height of 36 inches above the finished floor;

       v.   The facility provides a credit card machine to transact business at the checkout counter for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a credit card machine at an accessible portion of the counter;

      **vi.** The current practice at Target is to maintain items for sale to the public on display racks within the required clear floor space to the counter;

     **vii.** The current practice at Target is to place items on top of the counter surface, which obstructs the required 36 inches of counter surface;

  **d.** Target provides dining surfaces for able bodied individuals but fails to provide that same experience to non-able bodied individuals by not providing an ADA accessible dining surface including but not limited to the following elements:

      **i.** There is no seating that is measured 28 inches minimum and 34 inches maximum above the finished floor;

     **ii.** The dining surfaces fail to have the required level of ADA accessible seating and be evenly disbursed throughout the seating area;

    **iii.** There are no dining surfaces that provides the required 30 x 48 inches of clear floor or ground space for a forward approach;

     **iv.** The dining surfaces fail to provide the required knee and toe clearance;

  **e.** Target provides bar style seating and dining surfaces for able bodied individuals but fails to provide that same experience to non-able bodied individuals by not providing an ADA accessible bar dining surface including but not limited to the following elements:

[12]

      i.   There is no seating that is measured 28 inches minimum and 34 inches maximum above the finished floor;

      ii.   The dining surfaces fail to have the required level of ADA accessible seating and be evenly disbursed throughout the seating area;

      iii.   There are no dining surfaces that provides the required 30 x 48 inches of clear floor or ground space for a forward approach;

      iv.   The dining surfaces fail to provide the required knee and toe clearance;

**f.**   Target provides a beverage dispensing machine for able-bodied individuals but fails to provide that same level of goods and services to disabled individuals which includes but is not limited to the following elements:

      i.   The beverage dispensing machines operable part is too high for a wheelchair user to operate;

      ii.   The beverage dispensing lids, and other condiment items on the counters are arranged so that individuals with disabilities cannot fully and independently access the items;

      iii.   Targets current practice on maintaining the condiment items stocked for guests, segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve drink lids and other items Target maintains on the counters without any regard to disabled individuals;

[13]

g.   Target provides an icee beverage dispensing machine for able-bodied individuals but fails to provide that same level of goods and services to disabled individuals which includes but is not limited to the following elements:

    i.   The icee beverage dispensing machines operable part is too high for a wheelchair user to operate;

    ii.   The icee beverage dispensing lids, and other condiment items on the counters are arranged so that individuals with disabilities cannot fully and independently access the items;

    iii.   Targets current practice on maintaining the condiment items stocked for guests, segregates individuals with disabilities to an inferior benefit because disabled individuals require assistance to retrieve drink lids and other items Target maintains on the counters without any regard to disabled individuals;

**Checkout Area**

h.   Target provides check-out aisles for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to individuals without disabilities, including but not limited to the following elements:

[14]

    **i.** There is no signage displaying the International Symbol of Accessibility in the same location as the check-out aisles identification;

    **ii.** The check-out aisles fail to extend the same depth as the non-accessible portion of the service counters;

    **iii.** The check-out aisles fail to provide the required knee and toe clearance for an individual with a disability from being able to approach the service counter;

    **iv.** There is no ADA accessible check-out aisles provided 28 inches minimum and 34 inches maxim above the finished floor that allows for the required knee and toe clearance;

    **v.** The check-out aisles exceed the maximum allowed height of 36 inches above the finished floor;

    **vi.** Target provides a credit card machine to transact business at the check-out aisles for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a credit card machine at an accessible portion of the check-out aisles;

**Guest Services Counter**

    **i.** Target provides guest service aisles for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to

[15]

individuals without disabilities, including but not limited to the following elements:

    **i.** There is no signage displaying the International Symbol of Accessibility in the same location as the guest service aisles identification;

    **ii.** The guest service aisles fail to extend the same depth as the non-accessible portion of the service counters;

    **iii.** The guest service aisles fail to provide the required knee and toe clearance for an individual with a disability from being able to approach the service counter;

    **iv.** There are no ADA accessible guest service aisles provided 28 inches minimum and 34 inches maxim above the finished floor that allows for the required knee and toe clearance;

    **v.** The guest service aisles exceed the maximum allowed height of 36 inches above the finished floor;

    **vi.** Target provides a credit card machine to transact business at the guest service aisles for able-bodied individuals, but fails to provide the same level of service to non-able-bodied individuals by providing a credit card machine at an accessible portion of the guest service aisles;

**Electronics Display Counters**

    **j.** Target provides display counters for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in

or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that shopping experience afforded to other individuals without disabilities;

**Family Restroom**

k.   There is signage for able-bodied individuals identifying and designating an area of the store as "Restrooms", however, there is no signage displaying the International Symbol of Accessibility identifying restrooms as ADA accessible;

l.   The facility provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

   i.   The flush control valve is not properly located on the open side of the toilet room;

   ii.   The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

   iii.   The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

m.   The trash can projects more than 4 inches off the wall into the required clear floor space at the lavatory;

[17]

**n.**   The lavatory sink drain pipes are not properly insulated or otherwise configured to protect against contact;

**o.**   The baby changing table exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

**p.**   The facility fails to maintain the accessible features of the family restroom that are required to be readily accessible to and usable by individuals with disabilities;

**Women's Restroom**

**q.**   The facility provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, including but not limited to the following elements:

    **i.**   The toilet compartment door fails to be self-closing;

    **ii.**   The toilet compartment door locking mechanism requires tight grasping, twisting, and/or pinching of the wrist;

    **iii.**   The toilet compartment door fails to have door pulls located on both sides;

    **iv.**   The flush control valve is not properly located on the transfer side of the water closet;

    **v.**   The centerline of the water closet exceeds the maximum allowed distance of 18 inches;

[18]

  **vi.** The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

  **vii.** The toilet paper dispenser fails to meet the required distance of 12 inches above the top gripping surface of the side wall grab bar;

  **viii.** The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

  **ix.** The baby changing table exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

  **x.** The coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

**r.** The facility fails to maintain the accessible features of the women's restroom that are required to be readily accessible to and usable by individuals with disabilities;

**Men's Restroom**

**s.** There is signage for able-bodied individuals identifying and designating an area of the store as "Restrooms", however, there is no signage displaying the International Symbol of Accessibility identifying restrooms as ADA accessible;

**t.** The facility provides a toilet compartment for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other

[19]

individuals without disabilities, including but not limited to the following elements:

    **i.**   The toilet compartment door fails to be self-closing;

    **ii.**   The toilet compartment door fails to have door pulls located on both sides;

    **iii.**   The toilet paper dispenser fails to meet the required distance of 12 inches above the top gripping surface of the side wall grab bar;

    **iv.**   The rear wall grab bar is not properly located 12 inches on the closed side of the toilet room and 24 inches on the transfer side;

    **v.**   The coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor;

**u.**   The facility fails to maintain the accessible features of the men's restroom that are required to be readily accessible to and usable by individuals with disabilities;

## Dressing Rooms

**v.**   There is signage for able-bodied individuals identifying and designating an area of the store as "Fitting Rooms", however there is no signage displaying the International Symbol of Accessibility identifying dressing rooms as ADA accessible;

**w.**   The facility provides dressing rooms for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other

[20]

individuals without disabilities, including but not limited to the following elements:

  **i.** The dressing room bench fails to meet the minimum required length of 42 inches;

  **ii.** The dressing room bench fails to provide 30X48 inches of clear floor or ground space at the end of the bench for a wheelchair user to transfer onto the bench;

  **iii.** The dressing room coat hook exceeds the maximum allowed unobstructed reach range of 48 inches above the finished floor.

22. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

23. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

24. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to make reasonable accommodations to individuals with disabilities.

COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12182(b)(2)(A)(ii)

25. Plaintiff re-alleges paragraphs 1-24 above.

26. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

27. By this Complaint, Plaintiffs provide sufficient notice of their demand for an alteration in Defendant's policies, practices, and procedures.

28. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

29. Nevertheless, Defendant has permitted a multitude of architectural barriers to exist in the inside of the store for years.

30. Defendant either has no policies, practices, and procedures to comply with Title III of the ADA, or else they do not abide by them. The rampant architectural barriers previously identified show that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers. Defendant's failure to provide full and equal use of

[22]

the facilities especially its parking lot and restrooms, not to mention access to the dressing rooms, and inaccessible check-out service counters establish that it has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices.

31. Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiffs differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiffs. Defendant will continue that discrimination forever until enjoined as Plaintiffs requests. The discrimination is described more particularly in the following paragraphs.

32. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure compliance at this facility with ADA Title III barrier removal, and to further effectuate that any barrier removal is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

33. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing policies, practices, and procedures prevent the removal of ADA Title III barriers and do not effectuate

the permanent removal of the barriers.

34. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing policies, practices, and procedures both in effect and/or explicitly call for remediation of ADA Title III barriers only upon demand by the disabled and the policies lack or reject any initiative in compliance- seeking with ADA Title III barrier laws and regulations absent demand by the disabled. Defendant's existing policies, practices, and procedures will continue to discriminate against individuals with restricted mobility.

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its store as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Target.

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

37. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges,

advantages, or other accommodations to individuals with disabilities.

38. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiffs hereby demand that Defendant both create and adopt a corporate policy and practice that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are removed from Defendant's store consistent with the ADA; (2) Defendant will institute all practices, policies, and procedures required to implement Title III, ADA to both remove architectural barriers and provide full use of its facility for full and equal enjoyment; (3) Defendant will provide the disabled, including those with mobility limitations full and equal use of Target; (4) Defendant will modify or replace the architectural barriers set forth in paragraph 21 to provide full and equal access to individuals with disabilities; (5) Target will remedy its practice of making ADA Title III remediations only upon demand by the disabled.

39. As pled above, Target Corporation, "owns" and "operates" Target, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

40. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

41. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal

policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**42.** Plaintiffs re-allege paragraphs 1-41 above.

**43.** 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**46.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**47.** Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); *"the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;"* 42 U.S.C. § 12101(a)(7). Congress even found that: *"the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the*

[26]

*opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity."* 42 U.S.C. § 12101(a)(8).

48. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

49. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

50. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

51. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural,

transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

52. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access.   Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

53. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182.

[28]

Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

54. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience.* *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162   L.Ed.2d 97 (2005) See also, *Baughman v. Walt Disney World Company,*   685 F.3D 1131, 1135 (9th Cir. 2012).

55. Plaintiffs Patrick Dunn and Hope Elly were denied full and equal access to the Target retail store. Plaintiffs specifically and definitely want to return to the Defendant's retail store to enjoy the preferred shopping experience that Target is known for which includes shopping for everyday essentials and fashionable merchandise at discounted prices. More specifically, Plaintiffs want to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiffs as follows: Defendant failed to provide Plaintiffs that same experience that non-disabled individuals have when shopping at Target; Defendant failed to provide Plaintiffs the opportunity to transact business at all of the sales/service counters in the same manner as non-disabled individuals; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the dressing rooms in the facility so that disabled individuals are not permitted to try on clothes for their individual fit and appearance; Defendant failed to maintain the accessible features of Target that are required to be readily accessible to and usable by Plaintiffs and others

similarly situated, such as maintaining the parking lot; and Defendant failed to provide the required accessible dressing rooms; and all the foregoing failures by Defendant inhibited Plaintiffs from having the same experience that non-disabled individuals have when at the Target retail store.

56. In its Preamble to the title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

57. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) require that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status ofsecond-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000)

[30]

(discussion of §§ 36.308, 36.203).

58.  Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non- disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

59.  Defendant discriminated against Plaintiffs by denying Plaintiffs "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiffs an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Target.

60.  Defendant's conduct and Defendant's unequal treatment to Plaintiffs constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiffs and others similarly situated unequally.

61.  Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute

continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility.   28 C.F.R.§ 36.211(a).

62. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

63. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12183(a)(1)

64. Plaintiffs re-allege paragraphs 1 - 63.

65. 42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.*

66. Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination ... continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation [] and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5). In its Preamble to the title III

regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

67. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities *"to get to, enter and use a facility."* H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," id., as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is *to ensure that the service offered to persons with disabilities is equal to the service offered to others*." *Id.*

68. As the legislative history makes clear, the ADA is geared to the future-- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, *while requiring all new construction to be accessible.* H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

69. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those

Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing title III of the ADA, 28 C.F.R. Part 36, Appendix A. The Standards set architectural requirements for newly constructed hotels that apply to all areas of the facility, from parking areas, exterior walkways, and entrances to lobbies, interior stairways, corridors, pools and guest rooms.

70. Defendant, as the "owner" and "operator" of the Target retail store was directly involved in the designing and/or construction of the retail store for first occupancy after January 1993.

71. Defendant was and is required to design and construct the Target store to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct *its retail store to be* readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its retail store in compliance with the ADA during planned alterations as described throughout this Complaint.

72. To date, the Defendant's discriminating actions continue.

73. Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. They are entitled to have their reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

74. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal actions by Defendant.

[34]

**WHEREFORE**, premises considered, Patrick Dunn and Hope Elly demand judgment against the Defendant on Counts One through Four and request the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order enjoining the Defendant to alter the facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and (v) and their implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant from operating its stores in violation of the ADA Title III in the future;

4. That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Target experience and to the use of the Target facility, and further order Defendant to maintain the required accessible features at the store so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendant to evaluate and neutralize

[35]

its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court enjoin Defendant to remediate the Target retail store to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four;

7.   That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

8.   That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted, this the 25th Day of August, 2016.

/s/ *[signature]*

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

/s/

**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 25th day of August, 2016 to the following:

**TARGET CORPORATION**
**c/o CT Corporation System**
**attn.: Registered Agent**
**2 North Jackson St. STE 605**
**Montgomery, Alabama 36104**

/s/ _L. Landis Sexton_

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
2047 Carter Hill Road
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*

[38]